IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

```
_____x
                               :
UNITED STATES OF AMERICA,       :        Criminal Action
                               :
            Plaintiff,          :        No.  2:15-cr-241
                               :
v.                              :
                               :        Date:  December 10, 2015
BOBBY D. BLANKENSHIP,           :
                               :
            Defendant.          :
_____x
```

TRANSCRIPT OF PLEA HEARING HELD
BEFORE THE HONORABLE THOMAS E. JOHNSTON, JUDGE
UNITED STATES DISTRICT COURT
IN CHARLESTON, WEST VIRGINIA

APPEARANCES:

For the Government:         AUSA JENNIFER R. HERRALD
                           U.S. Attorney's Office
                           P.O. Box 1713
                           Charleston, WV  25326-1713


For the Defendant:          DIANA LEIGH JOHNSON, ESQ.
                           Bowles Rice McDavid Graff & Love
                           P. O. Box 1386
                           Charleston, WV 25325-1386


Probation Officer:          Lee Cueva


Court Reporter:             Ayme Cochran, RMR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.

1          PROCEEDINGS had before The Honorable Thomas E. Johnston,

2     Judge, United States District Court, Southern District of West

3     Virginia, in Charleston, West Virginia, on December 10, 2015, at

4     2:09 p.m., as follows:

5          COURTROOM DEPUTY CLERK:  The matter before the Court is

6     the United States of America versus Bobby Blankenship, criminal

7     action number 2:15-cr-00241, scheduled for a plea hearing.

8          THE COURT:  Good afternoon.  Will counsel please note

9     their appearances?

10          MS. HERRALD:  Jennifer Herrald for the United States.

11          MS. JOHNSON:  Diana Johnson for Mr. Blankenship, who is

12     present in person, as well.

13          THE COURT:  Good afternoon.

14      Mr. Blankenship, will you please stand, and I will ask the

15     deputy clerk to administer an oath to you at this time.

16          COURTROOM DEPUTY CLERK:  Please raise your right hand.

17                **BOBBY BLANKENSHIP, DEFENDANT, SWORN**

18          THE COURT:  You may be seated.

19      Mr. Blankenship, do you understand that you're now under

20     oath and you must tell the truth and, if you testify falsely, you

21     may face prosecution for perjury or for making a false statement?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Throughout the course of this hearing, I'm

24     going to be asking you a number of questions, and I want to make

25     sure that you and I are communicating clearly.  So, if at any

time I ask a question that you don't understand or anything else occurs that you don't understand, I want you to feel free to speak up and seek clarification.

Also, if at any point you need to confer with your counsel, I'll be pleased to pause the proceedings to allow you to do so. Do you understand all that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Let me begin by asking you, how old are you?

THE DEFENDANT:  I'm 56 years old, sir.

THE COURT:  I might ask you to pull the microphone down a little bit closer to you and speak into that and speak up.

THE DEFENDANT:  Your Honor, I'm 56 years old.

THE COURT:  Is that microphone on?

Let's try it again.

THE DEFENDANT:  Okay.

THE COURT:  There we go.

THE DEFENDANT:  Your Honor, I am 56 years old, sir.

THE COURT:  Can you briefly describe your educational background?

THE DEFENDANT:  I graduated high school with a vocational diploma in 1977 in Logan County.

THE COURT:  And can you read and write and understand the English language?

THE DEFENDANT:  Yes, sir, Your Honor.

1          THE COURT:  Can you briefly describe your work

2  experience?

3          THE DEFENDANT:  Your Honor, since I -- after high

4  school, I worked around the coal mines a little bit, and then I

5  went into the retail business in the late 70s, and done that most

6  of my whole life.

7          THE COURT:  Have you taken any medicine or drugs or

8  consumed any acholic beverages within the last 24 hours?

9          THE DEFENDANT:  No alcohol, sir, but I do take quite a

10  bit of medication for my heart and my back.

11          THE COURT:  Okay.  And you took -- so, you took

12  prescription medications either last night or this morning?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And can you tell me what those were and

15  what they were for?

16          THE DEFENDANT:  Yeah.  I've got a list, if you want me

17  to read it to you.

18          THE COURT:  Sure.

19          THE DEFENDANT:  Okay.  It starts out every morning and

20  ends up every evening like this, Your Honor.  I'll start out with

21  a pill called Coreg for my heart.

22          THE COURT:  I'm sorry.  What is it?

23          THE DEFENDANT:  Coreg, K-o-r-e-g [sic].

24          THE COURT:  Okay.

25          THE DEFENDANT:  And then I take a Prilosec for my

stomach.  Plavix, a blood thinner for my heart.  Also, an 81-milligram Ecotrin aspirin for my heart.  Flomax, where I have some urinary tract problems.  Lisinopril, a blood pressure pill.  Ranexa, which is a heart pill that's supposed to relax my heart so I don't have chest pains, which started here recently.

And then, for my back, in the mornings, I take a 20-milligram Oxycontin, a 30-milligram oxycodone.  And then, for a muscle relaxant and nerves, he says it's a 10-milligram Valium, and then I use some nasal spray in the mornings, too, also because of allergies.

Then, in the evenings, I take Norvasc, another blood pressure pill.  I take the Coreg again, which is a twice-a-day pill.  Lipitor, a cholesterol medicine.  And then, in the evening again, another 20-milligram OxyContin and a 30-milligram oxycodone for my back.  And then, the Ranexa, a heart pill again.  And then, some hemorrhoid cream that I have to have.  And then, I do keep Nitro pills around, in case I do need those, sir.

THE COURT:  What was the last one?

THE DEFENDANT:  Nitro pills, sir.

THE COURT:  All right.  To the best of your knowledge -- and so, you would have taken these medications all within the last 24 hours?

THE DEFENDANT:  Yes, sir.

THE COURT:  And, to the best of your knowledge as you sit here today, are you suffering from any side effects from any

1  of those medications that would in any way affect your ability to

2  fully participate in this hearing today?

3      THE DEFENDANT:  No, sir.  I've been taking them awhile.

4  I'm pretty well used to them.  I appreciate Your Honor asking,

5  though.

6      THE COURT:  All right.  Have you ever been treated for

7  any mental illness or addiction to drugs of any kind?

8      THE DEFENDANT:  No, Your Honor.

9      THE COURT:  Do you know where you are and why you are

10  here today?

11      THE DEFENDANT:  Yes, Your Honor.

12      THE COURT:  Do you have any hearing impairment or other

13  disability which would prevent you from fully participating in

14  this hearing today?

15      THE DEFENDANT:  No, Your Honor.

16      THE COURT:  And, Ms. Johnson, do you have any reason to

17  question the competence of your client?

18      MS. JOHNSON:  No, Your Honor.

19      THE COURT:  All right.  I note that I have, I believe,

20  received the original of the plea agreement.

21      Ms. Herrald, has that changed in any way since the courtesy

22  copy provided to my chambers?

23      MS. HERRALD:  No, Your Honor

24      THE COURT:  All right.  Very well.

25      I want to just say something about this case.  In looking at

it, and the parties may have seen this, too, it is -- I think the law is a little unsettled in this area about whether or not this crime is a misdemeanor or a felony. Did you all have occasion to look at that?

MS. HERRALD: I had researched that, Your Honor, and concluded within at least my office that it was, in fact, a felony, as the defendant is not actually the FFL. He was simply an employee of the FFL, and I believe that it's likely that the FFL would consider this to have been outside the scope of any employment that would be covered by the FFL.

THE COURT: Ms. Johnson?

MS. JOHNSON: We had discussed that, and that was what she had presented to me, and I had an associate look into that, and that was the same conclusion that we had unfortunately reached, as well.

THE COURT: All right. Well, we've taken a look at it and it appears to me, particularly when you start looking at District Court opinions, that the courts are kind of all over the board on this. So, I think what I'd like for you all to do is after -- what I'm going to do is, I'm going to go ahead and proceed on the assumption that it's a felony. And so, this has the most direct impact on the potential penalties that I would advise him of.

If it turns out that we were all wrong and it's actually a misdemeanor, then it only enures to the benefit of the defendant,

1   obviously, but -- so, I'm erring on the side of advising him of

2   the higher potential penalties, and I'm not saying you're not

3   right.  You may very well be right.  But, when we looked at it, I

4   concluded it was sort of a tricky issue, and I would like you all

5   to weigh in on it in writing, you know, sometime, let's say, in

6   the next 30 days.  And you can do it jointly, if you want, but I

7   want to get your perspective, each of your perspectives, on that.

8        One case, in particular, of interest to me is a District

9   Court case out of the Eastern District of Virginia, *United States*

10  *v. Wegg*, W-e-g-g, 919 F. Supp. 898, a 1996 case out of the

11  Eastern District of Virginia, but there are a number of cases out

12  there that sort of address this.  I don't think there's a Fourth

13  Circuit case on it.  Although, if you can point one out to me,

14  that would be great.

15       There are other Circuit Court cases that have talked about

16  it; and then, there's several District Court opinions within the

17  Fourth Circuit about it, but I want to -- before I make that

18  decision once and for all, I want to give you all an opportunity

19  to weigh in on it.  Having said that then, I'm going to proceed

20  as if this is a felony today, as I indicated.

21       Turning back to the plea agreement, Mr. Blankenship, is that

22  your signature that appears on the seventh and final page of the

23  plea agreement?

24            THE DEFENDANT:  Yes, Your Honor, it is.

25            THE COURT:  And are those your initials that appear on

1  the other pages of the plea agreement?

2  　　　　THE DEFENDANT:  Yes, Your Honor.

3  　　　　THE COURT:  And have you reviewed with your attorney

4  each of the paragraphs of the plea agreement and the exhibits

5  attached to the plea agreement?

6  　　　　THE DEFENDANT:  Yes, Your Honor.

7  　　　　THE COURT:  And do you wish to have the various terms

8  of the plea agreement orally stated on the record or do you

9  believe that that is unnecessary?

10  　　　　THE DEFENDANT:  That would be unnecessary, Your Honor.

11  I understand it.

12  　　　　THE COURT:  And do you understand and agree with all of

13  the terms and provisions contained in the plea agreement?

14  　　　　THE DEFENDANT:  Yes, Your Honor.

15  　　　　THE COURT:  And, Ms. Johnson, have you reviewed each of

16  the paragraphs of the plea agreement, read and reviewed with your

17  client each of the paragraphs of the plea agreement, and the

18  exhibits attached to the plea agreement?

19  　　　　MS. JOHNSON:  Yes, Your Honor.  We've gone over it

20  several times.

21  　　　　THE COURT:  And, Ms. Johnson and Ms. Herrald, is there

22  any reason why either of you believe that the various terms of

23  the plea agreement should be orally stated on the record?

24  　　　　MS. HERRALD:  No, Your Honor.

25  　　　　MS. JOHNSON:  No, Your Honor.

1          THE COURT:  All right.  Nonetheless, Mr. Blankenship,

2     there are some provisions of the plea agreement that I want to go

3     over with you, starting with Section 10, which appears on Page 4,

4     and is entitled "Stipulation of Facts and Wavier of Federal Rules

5     of Evidence 410".

6        Now, this section relates to a couple of different matters,

7     the first of which is the Stipulation of Facts, which is attached

8     to the plea agreement as Exhibit A, and I want to turn your

9     attention to that document now.  I'm sorry, Exhibit B.  Yes, it's

10    Exhibit B.  That is a two-page document and, on the second page

11    of that Exhibit B, is that your signature which appears there?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  And have you read the Stipulation of Facts?

14          THE DEFENDANT:  Yes, Your Honor, I have.

15          THE COURT:  And do you agree that all of the facts

16    contained in the stipulation are true?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  All right.  A little bit about what will be

19    happening from here on out.

20        I will be asking the probation officer to prepare a

21    Presentence Investigation Report.  That report will contain

22    detailed factual findings regarding this offense and your

23    background, among other things.

24        Ultimately, at sentencing, I will make factual findings

25    based at least in part on the recommendations contained in the

Presence Report.

Now, you and the Government have reached an agreement regarding certain facts contained in this stipulation, but I want you to understand that, in this process, neither the probation officer, nor this Court, are bound by that Stipulation of Facts. Do you understand that?

THE DEFENDANT:  Yes, Your Honor, I understand.

THE COURT:  And do you further understand that if at sentencing I make findings of fact that are different from or inconsistent with the facts contained in the stipulation, you will still be bound by your guilty plea and would have no right to withdraw it?  Do you understand that?

THE DEFENDANT:  Yes, Your Honor, I do.

THE COURT:  All right.  Now, the other matter addressed in Section 10 of the plea agreement is a Waiver of Federal Rule of Evidence 410.  Now, first of all, do you understand that a "waiver" is a legal term that means you're giving something up?

THE DEFENDANT:  Yes, sir.  Yes, Your Honor.

THE COURT:  And then, Rule 410 of the Federal Rule of Evidence, Federal Rules of Evidence, generally provides that information or documents regarding plea negotiations, and this Stipulation of Fact would fall into that category, that sort of thing is not admissible at trial as a rule.  In other words, the Government can't use that sort of thing generally against you at trial.

1    However, under the waiver contained here in Section 10 in

2    the second paragraph, if you withdraw from the plea agreement or

3    it's no longer any good because you have violated one or more of

4    its terms and there is a subsequent trial, under this waiver, the

5    Government would be allowed to present its case in chief --

6    present the Stipulation of Facts in its case in chief or for

7    other purposes at that trial.  Do you understand that waiver?

8            THE DEFENDANT:  Yes, Your Honor, I do.

9            THE COURT:  Next, I want to refer you to Section 11 of

10   the plea agreement, which starts on Page 4 and runs over onto

11   Page 5, and is entitled "Agreement on Sentencing Guidelines".

12   Now, has your -- before we get into that, has your attorney

13   talked with you about the federal sentencing guidelines and how

14   they generally work?

15           THE DEFENDANT:  Yes, Your Honor, she has.

16           THE COURT:  And has she shown you that chart in the

17   back of the Guidelines book?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  All right.  Well, working from that chart,

20   I want to have a similar discussion with you.  If you'll recall

21   from the chart, on the left side of the page, there's a series of

22   numbers that run from low to high as you go down the page, and

23   those are offense levels, and the offense level is calculated by

24   starting with a Base Offense Level, or a starting point, and then

25   that's adjusted upward or downward, depending on the facts and

circumstances in the case, to arrive at an adjusted offense level.

Then, consideration is generally given to a reduction for acceptance of responsibility. Has your attorney talked with you about that?

THE DEFENDANT: Yes, Your Honor, she has.

THE COURT: All right. Then, we generally arrive at a Total Offense Level. Then, you go up to the top of the chart, and there are six criminal history categories, and you would fall into one of those, depending on the number of points, if any, assigned to any prior convictions that you may have.

Then, you combine the criminal history category and the Total Offense Level within the chart to arrive at a point in that chart that gives a range of months of imprisonment. Some parts of the chart allow for certain alternatives to imprisonment.

Do you understand everything that I have told you about the guidelines so far?

THE DEFENDANT: I understand, Your Honor.

THE COURT: All right. Now, once we arrive at that guideline range, that range of months in the chart, I have the authority to sentence you within that range. I also would have the authority, under some circumstances, to sentence you outside of that range, either above it or below it.

If I sentence you outside of the range based on factors identified in the guidelines themselves, it's generally known as

a "departure".

If I sentence you outside of the guideline range, again, above it or below it based on factors outside of the guidelines, it's generally known as a "variance".

Has your attorney talked with about all of these things that I've told you about the guidelines?

THE DEFENDANT:  Yes, Your Honor, she has.

THE COURT:  And do you believe that you understand all of these things about the guidelines that I have told you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Very well.  With all of that in mind, Section 11 contains an agreement that you have reached with the Government regarding one or more provisions of the federal sentencing guidelines.  Now, this is similar to the Stipulation of Facts, in that I will be asking the probation officer in the Presentence Report to do a recommended guidelines calculation and, ultimately, at sentencing, I will make guideline findings based at least in part on the probation officer's recommendation.

So, I want you to understand that, in this process, even though you have reached an agreement with the Government set forth here regarding the guidelines in Section 11, I want you to understand that neither the probation officer, nor this Court, are bound by that agreement on the guidelines.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor, I do.

1       THE COURT:  And do you further understand that if I

2   make guideline findings at sentencing that are different from or

3   inconsistent with this agreement on the guidelines, you will

4   still be bound by your guilty plea, and would have no right to

5   withdraw it?  Do you understand that?

6       THE DEFENDANT:  Yes, Your Honor, I understand.

7       THE COURT:  All right.  Next, I want to refer you to

8   Section 12 of the plea agreement, which appears on Page 5, and is

9   entitled "Waiver of Appeal and Collateral Attack".

10      Now, this section relates -- first of all, there's a couple

11  of things I want to talk with you about before we get into this

12  section.  First of all, it relates to a couple of different

13  procedures, and I want to describe those to you briefly.

14      An "appeal" is a procedure by which a party to a case before

15  a District Court like this one and, in a criminal case, it is

16  often the defendant, goes to the Court of Appeals, which is the

17  next level up of the court system, and argues that certain errors

18  or mistakes may have taken place in their criminal case before

19  the District Court.

20      A "collateral attack" is similar, but it is a separate civil

21  case that's sometimes referred to as a "habeas corpus petition"

22  and in which the defendant, after their criminal case is over,

23  may also argue that certain errors or mistakes may have taken

24  place in their criminal case before the District Court.

25      Now, do you understand those two procedures, at least as

1    I've briefly described them to you?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Now, the other thing I want to go over

4    before we get to Section 12 is the two phases of a criminal case,

5    and they're important, because Section 12 contains an appeal

6    waiver that relates to both of the phases of the criminal case.

7         So, the first phase of a criminal case is the phase in which

8    guilt or innocence is determined.  It starts at the very

9    beginning of the case and runs up until that determination is

10   made.  Sometimes, guilt or innocence is determined by a trial to

11   a jury or to a judge.  Much more often, it occurs as a result of

12   a guilty plea like what we're doing today.  That generally

13   results then in a conviction.

14        The second phase of a criminal case then is the penalty

15   phase in which the penalty for the crime obviously is determined

16   and that generally concludes in a sentencing hearing at the end

17   of the case.

18        Now, do you understand the two phases of a criminal case as

19   I've explained them to you?

20             THE DEFENDANT:  Yes, Your Honor, I do.

21             THE COURT:  All right.  With that in mind then, this

22   first paragraph of Section 12 contains an appeal waiver, and I

23   want to go over that with you now.  I just want to take a moment

24   and look at it.

25        Just a moment.

1     (Pause.)

2          THE COURT:  All right.  Do you understand that you waive

3     the right -- in the first paragraph of Section 12, do you

4     understand that you waive the right to appeal your conviction,

5     and any sentence of imprisonment, fine, or term of supervised

6     release, or the manner in which the sentence was determined on

7     any ground whatsoever, with one exception:  You may appeal any

8     sentence that is greater than the maximum penalty set forth by

9     statute.  Do you understand that waiver?

10          THE DEFENDANT:  Yes, Your Honor, I do.

11          THE COURT:  Anything about it that you don't understand

12     or that you have questions about?

13          THE DEFENDANT:  No, sir.  My attorney explained it to

14     me very well.

15          THE COURT:  All right.  Then, in the second paragraph,

16     do you also understand that you may not file a later civil

17     proceeding, sometimes referred to as a "collateral attack" or a

18     "habeas corpus petition", challenging your plea, conviction or

19     sentence?  Do you understand that?

20          THE DEFENDANT:  Yes, sir, I do understand.

21          THE COURT:  And, finally, do you understand that you

22     are in no event waiving your right to claim ineffective

23     assistance of counsel either on appeal or by collateral attack?

24          THE DEFENDANT:  Yes, Your Honor, I understand.

25          THE COURT:  All right.  Finally, I want to refer you to

Section 13 of the plea agreement, which begins on Page 5 and runs over onto Page 6, and it's entitled "Waiver of FOIA and Privacy Right". Now, this waiver means you can't go back after this case is over and seek documents or other information about this case from the Government even with a Freedom of Information Act request. Do you understand that waiver?

THE DEFENDANT: Yes, Your Honor, I do.

THE COURT: And, Ms. Johnson, have you thoroughly reviewed the plea agreement with your client?

MS. JOHNSON: Yes, Your Honor.

THE COURT: And do you believe that he fully understands the various terms and provisions of the plea agreement, including the waivers and other matters that I have gone over with him this afternoon?

MS. JOHNSON: Yes, Your Honor, I do.

THE COURT: And, Mr. Blankenship, have you reviewed the plea agreement in detail with your attorney?

THE DEFENDANT: Yes, Your Honor, I have.

THE COURT: And do you believe that you have had adequate time to discuss your case fully with your attorney?

THE DEFENDANT: Yes, sir, I have. I believe I have.

THE COURT: And has your attorney answered any questions that you have had about your case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And, Ms. Johnson, during your

1  representation of the defendant, has he been cooperative?

2         MS. JOHNSON:  Yes, Your Honor.  He's been very

3  cooperative.

4         THE COURT:  Mr. Blankenship, has anything further been

5  agreed to, either orally or in it writing, that is not contained

6  in the plea agreement?

7         THE DEFENDANT:  No, Your Honor.

8         THE COURT:  All right.  I will order that the plea

9  agreement be filed.

10     I will find that the defendant understands and agrees with

11  the terms contained in the plea agreement.

12     I will defer accepting or rejecting the plea agreement until

13  sentencing, after the Presentence Report has been received and

14  considered.

15     Now, Mr. Blankenship, have you received and read and

16  reviewed with your attorney the information or charging document

17  that has been proposed in connection with this plea agreement?

18         THE DEFENDANT:  Yes, Your Honor, I have.

19         THE COURT:  And do you understand the charge contained

20  in the information?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  And would you like me to read the

23  information to you or will you waive the reading of the

24  information?

25         THE DEFENDANT:  I will waive the reading, Your Honor.

1          THE COURT:  All right.  As I understand it, you will be

2     pleading guilty to a single-count information which charges you

3     with aiding and abetting a straw firearms purchase in violation

4     of 18 U. S. C. Sections 2 and 924 (a)(1)(A).  Now, I want to go

5     over that charge and the statutes with you in just a little bit

6     more detail.

7          18 U. S. C. Section 2 provides in pertinent part that,

8     "Whoever commits an offense against the United States, or aids or

9     abets its commission, shall be guilty of a crime against the

10    United States."

11         Now, the Government has charged you with aiding and abetting

12    the commission of knowingly making a false statement during the

13    purchase of a firearm in violation of 18 U. S. C. Section

14    924(a)(1)(A).  That statute provides in pertinent part that,

15    "Whoever knowingly makes any false statement or representation

16    with respect to the information required by this chapter to be

17    kept in the records of a person licensed under this chapter shall

18    be guilty of a crime against the United States."

19         Now, in order to establish aiding and abetting, the

20    Government would have to prove each of the following elements

21    beyond a reasonable doubt, and they are:

22         First, that another person actually committed the offense of

23    knowingly making a false statement during the purchase of a

24    firearm;

25         And, second, you knew that the offense was to be committed

or was being committed;

And, third, you knowingly did some act to aid the commission of that offense;

And, finally, you acted with the intention of causing the crime charged to be committed.

Now, to establish knowingly making a false statement during the purchase of a firearm, the Government would have to prove the following elements, each beyond a reasonable doubt, and they are:

First, that a firearms dealer was a federally licensed firearm dealer at the time the offense occurred;

And, second, a person made a false statement or representation in a record that the licensed firearm dealer was required by federal law to maintain;

And, third, that the person made the false statement with knowledge of its falsity.

Now, I want to share with you some definitions that apply to what I have just told you. In order to aid or abet the commission of a crime, you must knowingly and intentionally associate yourself in some way with the crime and knowingly and intentionally seek by some action to help make the crime succeed.

An act is done "knowingly" if done voluntarily and intentionally and not because of mistake or accident or other innocent reason.

An act is done "intentionally" if it is done deliberately and not by accident.

1    The term "dealer" includes any person engaged in the

2  business of selling firearms at wholesale or retail.

3    And the Form 4473, which is the subject of this case, is a

4  record required to be kept by a federal firearms licensee under

5  federal law.

6    Are there any objections to the elements as I have described

7  them?

8          MS. HERRALD:  No, Your Honor.

9          MS. JOHNSON:  No, Your Honor.

10          THE COURT:  All right.  I would also note that the

11  defendant is named in a three-count indictment, criminal action

12  number 2:15-cv-169, but is pleading guilty to a single-count

13  information, as I have indicated previously.  The Government

14  filed a Motion to Continue generally the indictment case and I

15  will be taking care of that after the hearing today and

16  continuing that.

17    All right.  Next, Mr. Blankenship, I want to go over with

18  you the maximum and any minimum sentences you may face as a

19  result of your plea by statute, and that is a maximum term of

20  imprisonment of five years; a maximum fine of $250,000.00, or

21  twice the gross pecuniary gain or loss resulting from your

22  conduct, whichever is greater; and a maximum term of supervised

23  release of three years.  A mandatory special assessment of

24  $100.00 would be required.  And restitution could be ordered if

25  it were found to be applicable.

1        Now, Mr. Blankenship, do you understand the penalties as I

2   have described them to you?

3            THE DEFENDANT:  Yes, Your Honor, I do.

4            THE COURT:  And do you understand I'm having the

5   lawyers in the case submit some briefing to me on whether or not

6   this is a felony or a misdemeanor?  If it is a misdemeanor, if it

7   turns out that it's a misdemeanor, and I don't know that it is, I

8   just want to explore this, but if it did turn out to be a

9   misdemeanor, the penalty would be substantially less than what I

10  just recited to you.  Do you understand that?

11           THE DEFENDANT:  Yes, Your Honor, I understand.

12           THE COURT:  Very well.  Moving on then, I want to

13  return to our discussion of the federal sentencing guidelines.

14  They are advisory, meaning they're not mandatory or don't have to

15  be followed, but they'll nevertheless play an important role in

16  your case from here on out.

17      This Court will consider the factors set forth in 18 U. S.

18  C. Section 3553(a), including the advisory guidelines in

19  determining the appropriate sentence in your case.

20      I now want to ask you some questions that will help me to

21  understand your understanding of the guidelines.

22      Have you discussed with your attorney the various factors

23  which apply in determining what the sentence in your case may be

24  under the advisory guidelines?

25           THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And do you understand that on this -- on

2     the charge contained in this information, you cannot in any event

3     receive a greater sentence than the statutory maximum that I

4     explained to you a moment ago?

5          THE DEFENDANT:  Yes, Your Honor, I understand.

6          THE COURT:  Do you understand that the Court will not

7     determine a sentence for your case until a later date, when a

8     Presentence Report has been completed, and both you and the

9     Government have had an opportunity to challenge the facts and

10    analysis reported by the probation officer?

11         THE DEFENDANT:  Yes, Your Honor, I understand.

12         THE COURT:  Do you also understand that under a concept

13    known as "relevant conduct", this Court, in determining the Total

14    Offense Level for sentencing purposes under the guidelines, may

15    take into account any conduct, circumstances or injuries relevant

16    to the crime of which you may convicted?

17         THE DEFENDANT:  Yes, Your Honor, I understand.

18         THE COURT:  Do you understand that after the Court has

19    determined what advisory guidelines apply to your case, the Court

20    has the authority to vary or depart from the advisory guidelines

21    and impose a sentence that is more severe or less severe than the

22    sentence called for by the guidelines?

23         THE DEFENDANT:  Yes, Your Honor, I understand that.

24         THE COURT:  Do you understand that in determining your

25    sentence, the Court is obligated to calculate the applicable

1    sentencing guidelines range, and to consider that range, possible

2    departures under the guidelines, and other sentencing factors

3    under 18 U. S. C. Section 3553(a)?

4            THE DEFENDANT:  Yes, Your Honor, I understand.

5            THE COURT:  Do you understand that parole has been

6    abolished and, if you're sentenced to prison, you will not be

7    released on parole?

8            THE DEFENDANT:  Yes, Your Honor, I understand that.

9            THE COURT:  If the Court accepts your plea of guilty

10   and the sentence ultimately imposed upon you is more severe than

11   you had hoped for or expected, you will still be bound by your

12   guilty plea, and would have no right to withdraw it?

13           THE DEFENDANT:  Yes, sir, I understand.

14           THE COURT:  Do you understand if you plead guilty to

15   this information, which charges you with a felony, you may lose

16   important civil rights, such as the right to vote; the right to

17   serve on a jury; the right to hold public office; and the right

18   to own or possess a firearm?

19           THE DEFENDANT:  Yes, Your Honor, I understand that.

20           THE COURT:  You have the right to have this charge

21   presented, the charge contained in the information, presented to

22   a federal grand jury, and I want to explain that process to you

23   briefly.

24       A grand jury is composed of at least 16, and not more than

25   23 persons, and at least 12 grand jurors must find that there is

1    probable cause to believe that you committed the crime with which

2    you are charged before you may be indicted.

3         Now, do you see any benefit to you of having this case

4    presented to a federal grand jury?

5              THE DEFENDANT:  No, Your Honor, I don't.

6              THE COURT:  Do you see any prejudice or disadvantage to

7    you of not having the case charged in the information presented

8    to a grand jury?

9              THE DEFENDANT:  No, Your Honor.

10             THE COURT:  All right.  Your counsel has been provided

11   with a waiver -- provided with a Waiver of Indictment Form.  I

12   would like for you -- and there's a typo there.  There's an extra

13   9 in the citation there.  It should be 924, not 9924.  Other than

14   that -- we can just mark that out.

15        This is a document that has what we call the style of the

16   case, *United States v. Bobby D. Blankenship,* the criminal action

17   number.  It's entitled "Waiver of Indictment", and it states, as

18   follows:  "I, Bobby D. Blankenship, am accused of violating 18 U.

19   S. C. Sections 2 and 924 (a)(1)(A).  I have been advised of the

20   nature of the charge, of the proposed information, and of my

21   rights.  I hereby waive in open court prosecution by indictment

22   and consent that the proceedings may be by information rather

23   than by indictment."  And there's space for you to sign and date,

24   space for your counsel to sign, and space for me to sign.

25        Now, do you understand what I have just read to you?

1          THE DEFENDANT:  Yes, Your Honor, I do.

2          THE COURT:  Anything about the Waiver of Indictment or

3   anything else about the Waiver of Indictment procedure that you

4   don't understand or that you have questions about?

5          THE DEFENDANT:  No, Your Honor.  I'm fine.

6          THE COURT:  All right.  If you're prepared to do so

7   then, I will ask that you sign the waiver and date it.  Then,

8   I'll ask your counsel to sign it and tender it to the Court.

9          MS. JOHNSON:  May I approach, Your Honor?

10          THE COURT:  You may.

11       All right.  I will note for the record that I am striking

12   through one 9 on the Waiver of Indictment and that the defendant

13   has signed and dated the Waiver of Indictment Form, as has his

14   counsel.  I am now signing it, and I will order that it be made

15   part of the record for this proceeding.

16       Next, Mr. Blankenship, I want to talk with you regarding

17   your trial and constitutional rights.  You have the right to

18   plead not guilty to this information and maintain a not guilty

19   plea throughout these proceedings, including at trial.

20       You have the right to be represented by counsel.

21       You have the right to a speedy and public trial by a jury

22   composed of citizens of this district.

23       You have the right to confront and have your attorney cross

24   examine witnesses and have your attorney move to suppress any

25   evidence she believes was illegally or unconstitutionally

1    obtained.

2        You have the right not to testify or otherwise incriminate

3    yourself, and your exercise of this right cannot beheld against

4    you.

5        Do you understand these rights so far?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  You have the right to have the Government

8    come in here and prove its case beyond a reasonable doubt.

9        The jury's verdict would have to be unanimous.

10       You have the right to present evidence on your own behalf.

11       You have the right to testify on your own behalf at trial;

12       And you have the right to subpoena witnesses to testify for

13   you.

14       Do you understand all of these rights?

15           THE DEFENDANT:  Yes, Your Honor, I do.

16           THE COURT:  Any of them that you don't understand or

17   that you have questions about?

18           THE DEFENDANT:  No, Your Honor.

19           THE COURT:  Other than your right to counsel, do you

20   understand that you will be giving up all of these rights by

21   entering a plea of guilty?

22           THE DEFENDANT:  Yes, Your Honor, I understand.

23           THE COURT:  Do you understand that once you have

24   entered a plea of guilty, there is not going to be any trial, no

25   jury verdict, and no findings of innocence or guilt based on

1  disputed evidence presented to me or to a jury?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Do you believe that you fully understand

4  the consequences of entering a plea of guilty?

5          THE DEFENDANT:  Yes, Your Honor, I do.

6          THE COURT:  And, Ms. Johnson, having reviewed this case

7  and the plea agreement in detail with your client, do you believe

8  that your client fully understands his rights and fully

9  understands the consequences of entering a plea of guilty?

10          MS. JOHNSON:  Yes, Your Honor, I do.

11          THE COURT:  All right.  I note there is a Stipulation

12  of Facts attached to the plea agreement.  Is there any objection

13  to the Court utilizing the Stipulation of Facts in its

14  consideration of the guilty plea?

15          MS. HERRALD:  No, Your Honor.

16          MS. JOHNSON:  No, Your Honor.

17          THE COURT:  Or the factual basis, I should say.

18      All right.  Very well.  The Court will so proceed.

19      Mr. Blankenship, will you please stand?

20      As to the charge contained in the single-count information,

21  how do you plead, sir, guilty or not guilty?

22          THE DEFENDANT:  I plead guilty, Your Honor.

23          THE COURT:  You may be seated.

24      Your counsel has been provided with a written Plea of Guilty

25  Form.  I would ask that you go over that with her, if necessary,

1   sign and date it.  Then, I will ask her to sign it and tender it

2   to the Court.

3           MS. JOHNSON:  May I approach, Your Honor?

4           THE COURT:  You may.

5       All right.  I'll note for the record that the defendant has

6   signed and dated the written Plea of Guilty Form; it has been

7   witnessed by his counsel; and I will order that it be made a part

8   of the record for this proceeding.

9           Mr. Blankenship, is this plea the result of any threat, or

10  coercion, or harassment of you by anyone?

11          THE DEFENDANT:  No, Your Honor.

12          THE COURT:  Is it the result of any promise or

13  inducement other than those contained in the plea agreement?

14          THE DEFENDANT:  No, Your Honor.

15          THE COURT:  Are you pleading guilty to protect anyone?

16          THE DEFENDANT:  No, Your Honor.

17          THE COURT:  Are you acting voluntarily and of your own

18  free will in entering this guilty plea?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Has anyone promised or predicted the exact

21  sentence which will be imposed in this case?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  Do you understand no one could know at this

24  time the exact sentence which will be imposed?

25          THE DEFENDANT:  I understand that, yes, Your Honor.

1          THE COURT:  Has your attorney adequately represented

2     you in this matter?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Has your attorney left anything undone

5     which you think should have been done?

6          THE DEFENDANT:  No, sir, Your Honor.  I don't think so.

7          THE COURT:  Have you or your attorney found any defense

8     to the charge contained in the information?

9        (Counsel and defendant confer.)

10          THE COURT:  Do you understand the question?

11          THE DEFENDANT:  No, sir.

12          THE COURT:  Have you -- have you or your attorney found

13     any defense, any legal or factual defense, to the charge

14     contained in the information?

15          THE DEFENDANT:  No, sir.  No, we haven't.

16          THE COURT:  Ms. Johnson, do you agree?

17          MS. JOHNSON:  I agree, Your Honor.

18          THE COURT:  All right.  Mr. Blankenship, are you, in

19     fact, guilty of the crime charged in the information?  In other

20     words, did you do it?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  All right.  I will find that the defendant

23     is competent and capable of entering an informed plea; that the

24     plea is freely and voluntarily made; that the defendant

25     understands the nature of the charges and is aware of the

1    consequences of the plea.

2        I will find that the defendant understands his rights and

3    understands that he is giving up these rights by entering a plea

4    of guilty.

5        I will defer a factual basis finding, but I will accept the

6    plea of guilty to the information, but will defer adjudging the

7    defendant guilty until the time of sentencing.

8        I will ask the probation officer to prepare a Presentence

9    Investigation Report.

10        Mr. Blankenship, it is important that you cooperate fully

11    with the probation officer in the preparation of the Presentence

12    Report.  If you fail to cooperate fully and truthfully with the

13    probation officer, you may be subject to an enhancement of your

14    sentence or the forfeiture of certain sentence reductions for

15    which you might otherwise be eligible.

16        It is also important that you not commit any additional

17    crimes between now and sentencing, as there are additional

18    punishments that may be imposed for committing additional crimes.

19        Sentencing will be set for March 17, 2016 at 2:00 p.m.  I

20    will put my other presentence dates in the post-plea order.  I

21    note that the defendant is current -- well, he's probably on a

22    bond for the indictment case.  Is there any objection to him

23    remaining on that bond pending sentencing in the information

24    case?

25           MS. HERRALD:  No objection, Your Honor.

THE COURT:  All right.  I assume the defendant has no objection to that.

MS. JOHNSON:  No objection.

THE COURT:  All right.  Very well.

I think the only remaining thing then is, I've been sitting here thinking about this, whether or not this is a misdemeanor or felony really is a sentencing issue, at this point.  The -- it doesn't really change anything else about the plea colloquy we just did, other than the advice regarding penalties.  So, it seems to me there's no rush.  What would you say to filing -- deadline to file something a month in advance of the sentencing? That would be like February -- it would be February 17th.

MS. HERRALD:  No objection to that deadline, Your Honor.

MS. JOHNSON:  That's fine, Your Honor.  And, actually, as I was sitting here, I'm actually speaking at a conference out of state that day.

THE COURT:  Oh, okay.

MS. JOHNSON:  I will be gone that Thursday and Friday, I believe it is.

THE COURT:  Okay.  Well, we'll adjust the schedule and put it in somewhere either right before or right after, but it will be within a week or so of that.

MS. JOHNSON:  Actually, I'm sure I'll be leaving on the 16th to get there, but otherwise --

1          THE COURT:  So, we'll avoid the 16th, 17th and 18th.

2          MS. JOHNSON:  That would be great, Your Honor.  Thank

3     you.

4          THE COURT:  All right.  Well, whatever date I set then

5     for sentencing, any memorandum on misdemeanors versus felony can

6     be filed 30 days in advance and it can be filed jointly.  If

7     everybody is in agreement, it doesn't have to be lengthy either,

8     but I do want the -- you know, you mentioned, Ms. Herrald, that

9     the defendant was an employee of the FFL and some of the cases

10    involve employees, so I just -- I'd just like the parties'

11    perspective on all of those, that whole conglomeration of issues,

12    for lack of a better term.  Any questions about that?

13         MS. HERRALD:  No, Your Honor.

14         THE COURT:  Anything else we need to take up today?

15         MS. JOHNSON:  No, Your Honor.

16         MS. HERRALD:  No, Your Honor.

17         THE COURT:  All right.  Thank you.

18       (Proceedings concluded at 2:44 p.m., December 10, 2015.)

19

20    CERTIFICATION:

21       I, Ayme A. Cochran, Official Court Reporter, certify that

22    the foregoing is a correct transcript from the record of

23    proceedings in the matter of United States of America, Plaintiff

24    v. Bobby D. Blankenship, Defendant, Criminal Action No.

25    2:15-cr-241, as reported on December 10, 2015.

1

2    s/Ayme A. Cochran, RMR, CRR            March 23, 2016

3    Ayme A. Cochran, RMR, CRR                    DATE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25