**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                  CRIMINAL ACTION NO. 2:15-cr-00241

BOBBY D. BLANKENSHIP,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the determination of whether there is a factual basis for Defendant's plea.   For the reasons discussed herein, the Court **FINDS** that there is a factual basis for the plea.

## *I.     Background*

This is a case involving a "straw" firearms transaction.   "Straw purchase transactions involve the purchase of a firearm by an individual legally eligible to make the purchase (the straw) with the intent to immediately transfer the gun to another individual who is legally ineligible to purchase the weapon (the actual purchaser)."   *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1293 (11th Cir. 2008).   As recently discussed by the Supreme Court, a straw purchase arrangement is designed to circumvent federal background check requirements calculated to keep firearms out of the hands of prohibited persons:

[C]onsider what happens in a typical straw purchase. A felon or other person who cannot buy or own a gun still wants to obtain one. (Or, alternatively, a person who could legally buy a firearm wants to conceal his purchase, maybe so he can use the gun for criminal purposes without fear that police officers will later trace it to him.) Accordingly, the prospective buyer enlists an intermediary to help him accomplish his illegal aim. Perhaps he conscripts a loyal friend or family member; perhaps more often, he hires a stranger to purchase the gun for a price. The actual purchaser might even accompany the straw to the gun shop, instruct him which firearm to buy, give him the money to pay at the counter, and take possession as they walk out the door. . . . What the true buyer would *not* do—what he would leave to the straw, who possesses the gun for all of a minute—is give his identifying information to the dealer and submit himself to a background check.

*Abramski v. United States*, 134 S. Ct. 2259, 2267–68 (2014); *see also United States v. Wegg*, 919 F. Supp. 898, 899 (E.D. Va. 1996) (noting that straw purchases "occur when an individual purchases firearm for another but fills out the paperwork for himself or herself").

As this description makes clear, a straw purchase can occur "with or without the knowing complicity of the licensed dealer." *Id*. at 900. However, where a licensed dealer *is* knowingly complicit in a straw purchase, the dealer's participation makes it much more likely, indeed ensures, that the illegal transaction will occur as planned. After all, licensed dealers have long been recognized as the "principal agent[s] of federal enforcement," *United States v. Huddleston*, 415 U.S. 814, 824 (1974), and their failure to fulfill their critical gatekeeping role of verifying, "at the point of sale, whether a potential buyer may lawfully own a gun," *Abramski*, 134 S. Ct. at 2263, allows an illegal straw transaction to proceed without detection.

In this case the defendant, Bobby D. Blankenship ("Defendant"), as an employee of a federally licensed firearms dealer, engaged in a straw firearms transaction. He was originally charged in a three-count Indictment, in which a federal grand jury charged him with three felony counts of knowingly selling a firearm to a convicted felon, in violation of 18 U.S.C. §§ 922(d)(1) and 924(a)(2). *United States v. Blankenship*, 2:15-cr-00169 (S.D. W. Va. 2015), ECF No. 2.

2

Subsequently, however, the government filed an Information against Defendant, charging him instead with felony aiding and abetting a straw firearms purchase, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2.   (ECF No. 1.)   Defendant entered a plea of guilty to the charge contained in the Information on December 10, 2015, (ECF Nos. 6 and 7), pursuant to which the government agreed to dismiss the charges contained in the pending Indictment at sentencing.   (ECF No. 7.) The Court deferred finding a sufficient factual basis for Defendant's plea at that plea hearing. (*See* ECF No. 4.)   The case initiated against Defendant by the Indictment is currently continued generally, pending disposition of the charges contained in the present Information.   *See United States v. Blankenship*, 2:15-cr-00169 (S.D. W. Va. 2015), ECF No. 33.

Defendant agreed to the following stipulation of facts as establishing a factual basis for the pled offense:

> On September 1, 2012, at or near Logan, Logan County, West Virginia, and within the Southern District of West Virginia, defendant Bobby D. Blankenship knowingly aided and abetted another individual (hereinafter "B.T.") in knowingly making a false statement on Department of Justice ATF Form 4473 during the sale of a firearm at Big Eagle Gun & Pawn III, which at the time was a federally licensed firearms dealer.   Form 4473 is a form required by the provisions of Chapter 44, Title 18, United States Code, to be kept in the records of Big Eagle Gun & Pawn III.   On September 1, 2012, Mr. Blankenship was employed by Big Eagle Gun & Pawn III.   On that date, B.T. signed a Form 4473, which falsely stated that B.T. was the transferee of a firearm, that is, a Glock 10mm pistol.   However, Section A of that form was completed by the true transferee of the firearm, Terry Tomblin, a person Mr. Blankenship knew or had reason to believe was prohibited from possessing firearms.   Mr. Blankenship aided and abetted the false statement on Form 4473 by having B.T. sign the Form 4473 instead of Terry Tomblin.   Mr. Blankenship had B.T. sign the form because he knew Terry Tomblin would not pass the background check and the sale would be denied.   Mr. Blankenship also signed and submitted the form knowing that it falsely identified the transferee of the firearm as B.T.

(ECF No. 7, Ex. B at 1–2.)

Thus, the facts appear to demonstrate that Defendant knowingly participated in a straw firearms transaction. That these facts meet the elements of the charged offense will be addressed at the end of this opinion in Section IV. However, the Court first addresses how the federal Gun Control Act punishes this conduct when engaged in by a federally licensed firearms dealer. To help its determination of that issue, the Court ordered the parties to submit briefing regarding the classification of the charge contained in the Information. (ECF No. 8.) The parties submitted such briefing on February 23, 2016, and disagree as to the proper classification of the charge.[1] (ECF Nos. 10 and 11.) Defendant is currently scheduled to be sentenced on July 26, 2016, and the issue of whether a factual basis exists to support the crime as charged by the government is now ripe for decision.

## II. *Legal Standard*

"A voluntary and intelligent plea of guilty is an admission of all the elements of a formal criminal charge and constitutes an admission of all material facts alleged in the charge." *United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993) (citations omitted). Nonetheless, Federal Rule of Criminal Procedure 11 provides that, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "[T]he Rule ensures that the court make clear exactly what a defendant admits to, and whether those admissions are factually sufficient to constitute the alleged crime." *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991) (citing *United States v. Fountain*, 777 F.2d 351, 355 (7th Cir. 1985), *cert. denied*, 475 U.S. 1029 (1986)). "The requirement to find a factual basis is designed to 'protect a

---

[1] Defendant has not contested his current charge or sought to withdraw from the plea agreement. His briefing on this issue makes clear that the argument in favor of classifying his pled offense as a misdemeanor "is submitted at the behest of the Court and should not be considered to breach the Plea Agreement." (ECF No. 10 at 2.)

defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'" *United States v. Mastrapa*, 509 F.3d 652, 660 (4th Cir. 2007) (quoting Fed. R. Crim. P. 11 advisory committee's notes (1966)).

"In determining whether a guilty plea has a factual basis, the district court need not rely only on the Rule 11 plea colloquy." *Id*. Rather, the court "may conclude that a factual basis exists from anything that appears on the record." *Id*. (quoting *DeFusco*, 949 F.2d at 120). This Court regularly relies upon undisputed facts and inferences arising therefrom taken from stipulations of fact, direct inquiry to defendants during Rule 11 hearings, and information in presentence reports to which no objection is made in assessing the factual basis for pleas. This list is by no means exhaustive, as the factual basis may be found from anything in the record. *Id*.

"In order to find a factual basis, the court need not establish that a jury would find the defendant guilty or even that the defendant is guilty by a preponderance of the evidence." *United States v. Torres*, 319 F. App'x 220, 221 (4th Cir. 2009). "[T]he district court . . . 'need only be subjectively satisfied that there is a sufficient factual basis for a conclusion that the defendant committed all of the elements of the offense.'" *United States v. Ketchum*, 550 F.3d 363, 366 (4th Cir. 2008) (quoting *United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997)). However, defendants do not have an "absolute right to have a guilty plea accepted," and the "court may reject a plea in exercise of sound judicial discretion." *Santobello v. New York*, 404 U.S. 257, 262 (1971). "The trial court has wide discretion in determining whether a factual basis exists." *United States v. Morrow*, 914 F.2d 608, 611 (4th Cir. 1990) (quoting *United States v. Lumpkins*, 845 F.2d 1444, 1451 (7th Cir. 1988)).

### III.    Felony or Misdemeanor?

As noted above, Defendant pled guilty to a single-count Information, which charges him with aiding and abetting the making of a false statement with respect to information required to be kept in the records of a federally licensed firearms dealer, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2.   Although the current posture of the case requires this Court to determine whether a factual basis exists for that plea, the question presented here is a legal one: can the employee of a federally licensed firearms dealer who knowingly participates in a straw firearms transaction be charged, as an accomplice, under the § 924(a) felony false statement provision?   The Court's determination thus turns on a question of statutory interpretation, and, of course, "[t]he starting point for any issue of statutory interpretation is the language of the statute itself."   *United States v. Weaver*, 659 F.3d 353, 356 (4th Cir. 2011) (citing *United States v. Bly*, 510 F.3d 453, 460 (4th Cir. 2007)).   "In that regard, [a court] must first determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute."   *Ignacio v. United States*, 674 F.3d 252, 254 (4th Cir. 2012) (citation omitted).   "If the plain language is unambiguous, [a court] need look no further."   *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 631 (4th Cir. 2015) (citation omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."   *Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 471 (4th Cir. 2011) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)); *see also Abramski*, 134 S. Ct. at 2267 (noting that, in the context of statutory interpretation, a court's task is to "interpret the relevant words not in a vacuum, but with reference to the statutory context, 'structure, history, and purpose'" (quoting *Maracich v. Spears*, 133 S. Ct. 2191, 2209 (2013))).

A.      **Statutory Scheme**

The Gun Control Act of 1968 (the "GCA"), *codified as amended* at 18 U.S.C. §§ 921–931 (2006), was passed "in order to regulate interstate firearms transactions, primarily through licensing requirements on firearms businesses."   *Nat'l Rifle Ass'n v. Brady*, 914 F.2d 475, 477 (4th Cir. 1990).   The "focus of the federal scheme is the federally licensed firearms dealer," *Huddleston*, 415 U.S. at 825, and regulations with respect to such dealers are designed "principally to prevent guns from falling into the wrong hands," *Abramski*, 134 S. Ct. at 2263.   At its most basic level, the Act defines classes of people categorically determined to have "the wrong hands"—for example, felons, fugitives, illegal aliens, and those who have been convicted of misdemeanor crimes of domestic violence—and restricts their access to firearms by making it a felony both for such prohibited persons to possess a firearm, 18 U.S.C. § 922(g), and for "any person to sell or otherwise dispose of" a firearm to such prohibited persons, 18 U.S.C. § 922(d). *See United States v. Parker*, 262 F.3d 415, 422 (4th Cir. 2001) (noting that § 922(g)(1) "forbids certain convicted felons from possessing firearms or ammunition, just as § 922(d)(1) forbids knowingly transferring firearms or ammunition to these felons" (citing *United States v. Essick*, 935 F.2d 28, 29 (4th Cir. 1991))).

In order to enforce this fundamental prohibition on allowing firearms to reach prohibited persons, the Act "establishes a detailed scheme to enable the dealer to verify, at the point of sale, whether a potential buyer may lawfully own a gun." *Abramski*, 134 S. Ct. at 2263.   Federally licensed firearms dealers are subject to strict recordkeeping requirements designed "to enable federal authorities both to enforce the law's verification measures and to trace firearms used in crimes." *Id*. (citing H.R. Rep. No. 1577, 90th Cong., 2d Sess., 14 (1968)).   In particular, 18

7

U.S.C. § 923 requires each licensed dealer to "maintain such records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe."   18 U.S.C. § 923(g)(1)(A).   Pursuant to the power granted by this statutory provision, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") has promulgated the above-referenced Form 4473, which requires a firearms purchaser to record relevant identifying information, "lists all the factors disqualifying a person from gun ownership," "asks the would-be buyer whether any of them apply," and mandates that the potential buyer certify that he is, in fact, the actual buyer of the firearm in question.   *Abramski*, 134 S. Ct. at 2263–64.   Accordingly, as the Supreme Court has squarely held, the information compelled by Form 4473 is the type of information that a licensed firearms dealer is required by law to maintain in his records.   *Id.* at 2274.

Although a licensed dealer who knowingly participates in a straw transaction potentially violates several provisions of the GCA, *see Wegg* 919 F. Supp. at 901–02 (detailing the "numerous provisions [within the firearms statute] which may apply to straw purchases"), at issue here are the false statement prohibitions in § 924(a).   Notwithstanding its label as a penalties section, § 924(a)(1) defines a substantive criminal offense.   *See United States v. Langley*, 62 F.3d 602, 611 n. 9 (4th Cir. 1995) (Phillips, J., concurring and dissenting) (noting that § 924(a)(1)(A) has been "consistently interpreted as defining a substantive offense of false statement, separate and apart" from similar false statement-related offenses defined in § 922); *United States v. Howell*, 37 F.3d 1197, 1200 n.4 (7th Cir. 1994) (noting "numerous unpublished appellate decisions" interpreting § 924(a)(1)(A) as a substantive offense, despite the fact that § 924 is generally labelled as a penalties provision).   As relevant here, it provides:

> Except as otherwise provided in this subsection, subsection (b), (c), (f), or (p) of this section, or in section 929, whoever . . . (A) knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter . . . shall be fined under this title, imprisoned not more than five years, or both.

18 U.S.C. § 924(a)(1)(A).

As the punishment indicates, the false statement offense defined by § 924(a)(1)(A) is a felony.   However, that offense is not the only false statement offense set forth in § 924(a). Indeed, § 924(a)(3)(A) prohibits the same conduct, when engaged in by "any licensed dealer," in nearly identical terms.   And notably, in stark contrast to § 924(a)(1)(A), § 924(a)(3)(A) provides for misdemeanor punishment.   Specifically, this misdemeanor provision states, as relevant here, that:

> Any licensed dealer, licensed importer, licensed manufacturer, or licensed collector who knowingly . . . (A) makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter . . . shall be fined under this title, imprisoned not more than one year, or both.

18 U.S.C. § 924(a)(3)(A).

Given the nature of this statutory scheme, it is a "fairly unremarkable proposition that [licensed dealers], if charged with the crime of making their own false statements in their records, could only be charged with a misdemeanor pursuant to § 924(a)(3)(A)."   *United States v. Johnson*, 210 F. Supp. 2d 889, 891 (E.D. Mich. 2002), *aff'd sub nom. United States v. Carney*, 387 F.3d 436 (6th Cir. 2004).   Section 924(a)(1)(A) applies, unless otherwise provided, to "whoever" knowingly makes a false statement with respect to required information.   In almost identical terms, § 924(a)(3)(A) prohibits the exact same types of false statements when made by a licensed dealer.   Accordingly, that section "provides otherwise" and carves out misdemeanor punishment for dealers who make the kind of false statements that would otherwise be punished as felonies if

9

made by anyone else.   In finding that the plain language of the statute prevents a licensed dealer from being directly liable under § 924(a)(1)(A) for knowingly falsifying his own records, the Court joins the conclusion reached by several other district courts within this circuit.   *See Wegg*, 919 F. Supp. at 903; *United States v. Dedrick*, 665 F. Supp. 2d 535, 537–41 (W.D.N.C. 2009); *United States v. Jackson*, 926 F. Supp. 2d 691, 707–11 (E.D.N.C. 2013).

It does not follow from this conclusion, however, that a licensed dealer may not also be liable for a felony where he falsifies his records in order to facilitate a straw transaction and aid and abet the false statement of a non-licensed member of the public.   Only one court has ever gone so far as to hold to the contrary and, as will be demonstrated below, that decision is inconsistent with both the nature of accomplice liability and the structure of the Gun Control Act.[2]

## B.    Aiding and Abetting Liability

The general aiding and abetting statute provides, in relevant part, that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."   18 U.S.C. § 2(a).   "Aiding and abetting is not itself a

---

[2] Defendant's Stipulation of Facts provides that he "was employed" by Big Eagle Gun & Pawn III, which was in turn a federally licensed firearms dealer.  (ECF No. 7, Ex. B at 1.)  The Government argues that Defendant was not himself a licensed dealer, and that his status as an employee of such a licensed dealer "does not automatically turn him into a licensed dealer," (ECF No. 11 at 5), but provides no authority in support of this contention.   This is perhaps unsurprising as the issue of defining which parties qualify as licensed dealers for purposes of § 924(a)(3) has received scant treatment in the case law.   There is, however, some authority suggesting that, under normal principles of agency, such employees would be considered dealers.   *See Jackson*, 926 F. Supp. 2d at 708 ("The government does not dispute that [certain employee defendants] may themselves be considered licensed firearms dealers, by virtue of their employment as agents of a licensed firearms dealer."); *Dedrick*, 665 F. Supp. 2d 535 (W.D.N.C. 2009) (in a prosecution of an individual defendant and a corporation, where the corporation was the "registered holder of a Federal Firearms License," treating the individual defendant as a dealer and accordingly converting his felony conviction under § 924(a)(1)(A) to a misdemeanor under § 924(a)(3)(A)).   Moreover, the Court is unaware of any case law indicating that an employee of a licensed dealer should *not* be treated as a licensed dealer.   Accordingly, the Court will assume for the sake of argument that Defendant is appropriately considered a licensed dealer.   Given this Court's ultimate determination that such dealers can be convicted of aiding and abetting the § 924(a)(1)(A) felony offense, however, such assumption is just that and the Court need not make any express finding on the issue of Defendant's status as a dealer.

federal offense, but merely 'describes the way in which a defendant's conduct resulted in the violation of a particular law.'" *United States v. Barefoot*, 754 F.3d 226, 239 (4th Cir. 2014) (quoting *United States v. Ashley*, 606 F.3d 135, 143 (4th Cir. 2010)).   Section 2 has a broad reach and "applies to the entire federal criminal code unless Congress clearly provides to the contrary." *United States v. Wasserson*, 418 F.3d 225, 235 (3d Cir. 2005) (collecting cases); *see also Pigford v. United States*, 518 F.2d 831, 834–35 (4th Cir. 1975) (noting that, "since Section 2 applies implicitly to all federal offenses, all indictments and informations are to be read as if the alternative provided for in Section 2 were embodied in each count thereof" (citing *United States v. Lester*, 363 F.2d 68, 72 (6th Cir. 1966))).

Although presently codified by statute, the substance of § 2 "derives from . . . common-law standards for accomplice liability," and the courts have accordingly played a large role in defining the statute's scope. *Rosemond v. United States*, 134 S. Ct. 1240, 1245 (2014) ("We have previously held that under § 2, 'those who provide knowing aid to persons committing federal crimes, with the intent to facilitate the crime, are themselves committing a crime.'" (quoting *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 181 (1994))); *see also Nye & Nissen v. United States*, 336 U.S. 613, 610 (1949) ("In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as something he wishes to bring about, that he seek by his action to make it succeed.'" (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938) (Hand, J.))).

Although § 2 is worded very broadly, courts have nonetheless imported certain narrow exceptions from the common law that serve to limit application of the aiding and abetting statute even when Congress does not expressly declare its intent to do so.   In general, the law recognizes

that the victim of a crime may not be held liable as an accomplice to that crime.   *See United States v. Southard*, 700 F.2d 1, 19–20 (1st Cir. 1983) (noting that "not every substantive crime is susceptible to an aiding and abetting charge," and recognizing exceptions for crime victims and persons provided special protection under a particular statute); 2 W. LaFave, Substantive Criminal Law § 13.3 (2d ed.) ("Where the statute in question was enacted for the protection of certain defined persons thought to be in need of special protection, it would clearly be contrary to the legislative purpose to impose accomplice liability upon such a person.").

Similarly, an exception to accomplice liability exists for crimes that are defined so as to make participation by another "necessary" or "inevitably incident" to the crime's commission. *See Wegg*, 919 F. Supp. at 907 ("[O]ne cannot be an accomplice if one's conduct is 'inevitably incident' to the commission of the offense." (citing Model Penal Code § 2.06(6)(b))); *United States v. Carney*, 387 F.3d 436, 455 (6th Cir. 2004) (Guy, J., dissenting) (noting the well-established common law exception to accomplice liability for crimes in which "it takes two to tango").   Under this exception:

> someone who merely buys heroin for personal use cannot be charged with aiding or abetting the distribution of heroin; a fourteen-year old who consents to sex with a forty-year old cannot be charged with aiding or abetting statutory rape; and a prostitute who sells her services to a client cannot be charged with aiding or abetting the solicitation of prostitution.

*Id*.  The justification is that "the legislature, by specifying the kind of individual who is to be found guilty when participating in a transaction necessarily involving one or more other persons, must not have intended to include the participation by the others in the offense as a crime."[3]

---

[3] A standard articulation of the inevitably incident exception, in the context of conspiracy liability, can be found in *Gebardi v. United States*, 287 U.S. 112 (1932), a decision interpreting a federal statute (the Mann Act) prohibiting the interstate transport of a female for the purpose of prostitution.   Discerning an "affirmative legislative policy" to leave the female's participation unpunished, the Court found it a "necessary implication of that policy" that "the same

*Southard*, 700 F.2d at 20; *cf. Abuelhawa v. United States*, 556 U.S. 816, 820 (2009) ("The traditional law is that where a statute treats one side of a bilateral transaction more leniently, adding to the penalty of the party on that side for facilitating the action by the other would upend the calibration of punishment set by the legislature . . . .").

In general, however, unless one of these carefully circumscribed exceptions is implicated, § 2 will apply to all federal offenses unless Congress has clearly demonstrated its intent to preclude accomplice liability.  This is true even when the offense is defined in such a way as to make it impossible for the accomplice to commit the crime directly; "it long has been established that a person can be convicted of aiding and abetting another person's violation of a statute even if it would be impossible to convict the aider and abettor as a principal."  *United States v. Yakou*, 428 F.3d 241, 251–52 (D.C. Cir. 2005) (citations omitted); *see also United States v. Ruffin*, 613 F.2d 408, 409–10 (2d Cir. 1979) (finding a defendant liable for aiding and abetting the violation of a statute prohibiting any "officer, director, agent, or employee" of an agency receiving certain types of federal financial assistance from embezzling that federal assistance, notwithstanding the fact that the defendant was not himself such an officer, director, agent, or employee).[4]

---

participation which the [Mann Act] contemplates [as] an inseparable incident of all cases in which the woman is a voluntary agent at all, but does not punish, was not automatically to be made punishable under [§ 2]."  *Id.* at 123.

[4]  LaFave provides the following common law examples to illustrate this proposition that "[o]ne may be an accomplice in a crime which, by definition, he could not commit personally":

> For example, on an accomplice theory: one not the owner of the destroyed premises may be guilty under a statute making it an offense for the owner of property to burn it with intent to defraud the insurer; one not a public officer may be guilty of improperly keeping state records or of misconduct in public office; one not a fiduciary or public officer may be guilty of the crime of embezzlement by such persons; one not the mortgagor may be guilty of the unlawful disposition of mortgaged property; one not a minor may be guilty of illegal possession of alcoholic beverages by a minor; one not a prisoner may be guilty of engaging in oral copulation by a jail inmate; and one not the driver of the car may be guilty of a traffic violation concerning the operation of the vehicle.

2 LaFave, *supra*, § 13.3.

## C.     Analysis

As discussed above, Section 2 "typically applies to any criminal statute unless Congress specifically carves out an exception that precludes aiding and abetting liability." *Yakou*, 428 F.3d at 251–52 (quoting *United States v. Angwin*, 271 F.3d 786, 802 (9th Cir. 2001)).   The GCA is silent with respect to accomplice liability, and the majority of the courts to have analyzed the operation of accomplice liability in the context of § 924(a) have determined that the Gun Control Act does not evince any congressional intent to preclude such liability.[5]   In *Carney*, for example, the Sixth Circuit determined that the specific language in § 924(a)(3)(A) did not entirely supersede the more general language in § 924(a)(1)(A), and accordingly found that the defendant licensed dealers, who were alleged to have falsified records to facilitate straw purchases by prohibited persons, were subject to punishment under "either, or both," § 924 penalty provisions.   *Carney*, 387 F.3d at 444.   As discussed above, a licensed dealer's false statement on his own records will generally violate both provisions, which is why a dealer can only be punished directly under the specific provision applicable to dealers when such a false statement is made.   On the facts of *Carney*, however, where the conduct of licensed dealers demonstrated further that they had aided and abetted straw transactions by non-dealers, the court was able to find that "the government clearly was not constrained to instead prosecute the [defendants] only under the section 924(a)(3)(A) misdemeanor rule, *even if* § 924(a)(1)(A) does not *independently* apply to fabrications of material misinformation by firearms dealers on official transfer documents."   *Id*. at 446.   As the final clause of the above-quoted language indicates, a finding that a dealer cannot be directly prosecuted for false statement violations under § 924(a)(1)(A) does not compel the

---

[5] Moreover, as will be discussed below, none of the established exceptions to accomplice liability apply to Defendant's conduct.

result that the dealer cannot be held liable for aiding and abetting a violation of that provision through his facilitation of a straw transaction with a member of the general public.[6]

Similarly, in a case involving closely related conspirator liability under § 2, the Eighth Circuit found "nothing in the language . . . of the statute or legislative history to indicate Congress," in enacting a differential penalties scheme in § 924(a) to punish false statements, "intended to do anything more than allow for the option of misdemeanor prosecution for licensed dealers who make false statements on ATF forms, while leaving intact the felony prosecution structure for those . . . whose flagrant and repeated actions in accepting false ATF forms from straw purchasers . . . warrants felony punishment."  *United States v. Al-Muqsit*, 191 F.3d 928, 935 (8th Cir. 1999), *vacated in part on other grounds sub nom. United States v. Logan*, 210 F.3d 820 (8th Cir. 2000) (en banc).   The *Al-Muqsit* decision highlights the fact that a licensed dealer engages in different conduct when he falsifies his own records—and violates §§ 924(a)(3)(A) and 924(a)(1)(A) directly—than when his knowingly false attestation of a valid purchase on Form 4473 aids and abets a transferee's violation of § 924(a)(1)(A).

In the former situation, the dealer is not necessarily furthering a straw transaction; he could have any number of reasons for independently falsifying his own records, and many such

---

[6] As noted above, at least three district court opinions from within the Fourth Circuit have determined that a dealer cannot be convicted directly under the § 924(a) felony provision for knowing falsifications of his own records.   Two of those cases, however, involved situations in which licensed dealers aided and abetted the straw purchases of *other licensed dealers*, a primary offense punishable only under § 924(a)(3)(A) under the reasoning of those decisions.   In each case, the court expressly distinguished its rejection of accomplice liability in that context from the situation in which a dealer aids and abets a non-dealer's false statement, a primary offense punishable as a felony under § 924(a)(1)(A).   *See Jackson*, 926 F. Supp. 2d at 709 (finding case to be "critically distinguishable" from cases like *Carney* because "defendants in the case at bar are not alleged to have aided and abetted non-dealer members of the public, but instead are alleged to have aided and abetted each other, employees of a licensed firearms dealer"); *Dedrick*, 665 F. Supp. 2d at 540 n.6 (rejecting aiding and abetting liability where the jury's verdict was ambiguous as to which parties were aided and abetted, and the "jury could just as easily have found, as the indictment alleges, that the Defendants, all of whom were licensed firearms dealers, aided and abetted each other in misdemeanor violations of § 924(a)(3)").   The third district court case, as will be discussed below, is an outlier in rejecting aiding and abetting liability in this context.

falsifications likely qualify as the kind of "technical violations of the [GCA's] rigid record-keeping standards," *United States v. Rietzke*, 279 F.3d 541, 546 (7th Cir. 2002) (quoting 131 Cong. Rec. 18, 187 (1985 statement of Sen. Hatch)), for which Congress sought to reduce the punishment when it amended that statute in 1986.  *See United States v. Langley*, 62 F.3d 602, 605 (4th Cir. 1995) (noting that the 1986 amendment was enacted to infuse the GCA with a set of mens rea requirements and prevent the situation in which "liability could be imposed on law-abiding citizens for 'unintentional missteps'" (quoting *United States v. Obiechie*, 38 F.3d 309, 312 (7th Cir. 1994))); *United States v. Percival*, 727 F. Supp. 1015, 1018 (E.D. Va. 1990) (noting that the 1986 amendment "provided for misdemeanor penalties for certain record-keeping violations committed by licensed dealers").

When a licensed dealer falsifies his records in concert with a straw purchaser, however, his conduct more directly infringes upon the core purpose of the GCA: "to prevent guns from falling into the wrong hands."  *Abramski*, 134 S. Ct. at 2263.  Aiding and abetting a straw purchase necessarily furthers an illegal firearms transaction, whereas independent falsification of records by a dealer does not always have this effect, a fact critical to the determination in *Carney* that "the interplay of § 924(a)(1)(A) and § 924(a)(3)(A), respectively, does *not* pose an instance whereby general statutory language is entirely superseded by specific statutory terms which address a precise matter."  387 F.3d at 444.  It will sometimes be the case, as when a dealer knowingly falsifies his own records outside of the context of a straw transaction, that the two § 924(a) false statement prohibitions provide different punishment for identical conduct, and the specific appropriately controls the general.  But there will likewise be instances, such as when a dealer falsifies his forms to aid and abet a straw transaction, in which more severe punishment for aiding

and abetting is appropriate because the dealer's acts exceed the scope of the simple record-keeping offense the misdemeanor provision prohibits directly.

Thus, nothing in the structure of §924(a) demonstrates Congress' clear intent to prevent dealers from being charged with aiding and abetting the false statements, on federally required forms, of non-licensed straw purchasers.  While it provides differential punishment for dealers and members of the general public who independently make such statements, it provides no reason to limit a dealer's liability when he works in concert with a non-dealer to falsify a form and facilitate an illegal straw purchase.  "Without the option of charging dealers under the felony provisions of § 924, it would be impossible for law enforcement to 'go after' the first link in a chain which results in a plentiful supply of firearms for use in violent crime."  *Al-Muqsit*, 191 F.3d at 936 (citation omitted).  After all, "[n]o piece of information is more important under federal firearms law than the identity of a gun's purchaser," *Abramski*, 134 S. Ct. at 2275, and a dealer's abdication of his responsibility to identify and record, at the point of sale, the actual purchaser in each firearms transaction fundamentally undermines the GCA's central purpose of mobilizing licensed dealers to "insure that, in the course of sales or other dispositions by these dealers, weapons [are not] obtained by individuals whose possession of them would be contrary to the public interest," *Huddleston*, 415 U.S. at 825.

Only one court has come to the contrary conclusion and held that a licensed dealer cannot be liable for aiding and abetting a non-licensed person's false statement under § 924(a)(1)(A).  In that decision, the court based its conclusion largely on its fundamental determination that "[t]he government cannot avoid the direct application of § 924(a)(3) by attempting to use a different

17

provision in the same statute to punish the same behavior." *Wegg*, 919 F. Supp. at 903.[7]  The court reached this conclusion by reasoning that, where a straw transaction is involved, a licensed dealer engages in conduct that is identically punished by both the misdemeanor and the felony provision of § 924(a).  As that court phrased the relevant inquiry:

> The question, then, is really whether prosecutors may charge aiding and abetting to activate the felony provision of a statute, where defendant's identical acts would be a direct violation of a misdemeanor provision in the same statute, and where the legislative history strongly suggests that dealers, however situated, were intended to be treated differently under § 924.

*Id*. at 906.

Putting aside any difficulties associated with deriving meaning from legislative history, phrasing the inquiry this way overlooks a key point: aiding and abetting liability under § 924(a)(1)(A) is not *always* coextensive with direct liability under § 924(a)(3)(A), and a dealer's act will only *sometimes* violate both statutory provisions.  When the question is whether Congress intended to make an exception to the otherwise generally applicable § 2, this makes all the difference.  As discussed above, a dealer engages in fundamentally different, and more dangerous, conduct when he aids and abets the falsification of a form to facilitate a straw transaction than when he independently falsifies his own records.  Thus, the interpretation that Congress chose to punish the latter offense as a misdemeanor only, while allowing for felony punishment of the former is entirely reasonable; at the very least, it does not indicate an intent to shield dealers from aiding and abetting liability under § 924(a)(1)(A).

---

[7] The *Wegg* decision has been criticized by courts of appeal addressing issues of dealer liability under § 924(a)(1)(A). *See Carney*, 387 F.3d at 444 n.7 (concluding that "the *Wegg* decision was poorly reasoned and is inconsistent with all published circuit court authority on the matter"); *Rietzke*, 279 F.3d at 544 ("Of course *Wegg* carries no binding authority, nor do we find it even remotely persuasive.").

For related reasons, *Wegg*'s reliance on the "inevitably incident" exception to accomplice liability misses the mark.   As noted above, that exception only applies when a crime necessarily envisions the participation of another party.   Section 924(a)(1)(A) simply does not do this; as indicated above, a non-dealer member of the public can falsify a record and engage in a straw purchase without any participation on the part of the licensed dealer.   Thus, the statutory provision does not so much punish divergent conduct on opposite sides of a transaction differently as it categorically punishes certain classes of actors differently, regardless of whether or not they participate in any transaction.   Section 924(a) does treat dealers differently from other actors. But the way it achieves this effect is by excluding dealers from the class of people who can directly violate § 924(a)(1)(A)—not by explicitly describing a straw transaction and providing more lenient punishment for the seller in all such transactions.   Accordingly, rather than defining an offense in which participation by another is inevitably incident to commission, § 924(a)(1)(A), via the § 924(a)(3) carve out, defines an offense that may only legally be committed by certain persons directly (here, non-dealers).

As noted above, however, that situation is not an exception to accomplice liability, as the law recognizes that individuals legally incapable of violating a statute as a principal can be liable where they aid and abet that statute's violation by a person who is defined within the statute's scope.   *See, e.g., Ruffin*, 613 F.2d at 413 ("[I]t is undisputed that a person may be convicted as an aider and abettor under 18 U.S.C. § 2(a) even though he may lack the capacity to violate the substantive criminal statute.").   This is because when a principal within the statute's definition has committed the offense, "[t]he evil or harm with which the legislature was concerned has thus occurred, and the purposes of the criminal law are well served by also holding accountable those

persons not covered by the statute who assisted in bringing about the proscribed result."   2 LaFave, *supra*, § 13.3.   Here, as will be discussed, the record establishes that a straw transferee violated § 924(a)(1)(A) by making a false statement as to the nature of the true purchaser of the firearm.   Further, the Court discerns no directive from Congress to carve out an exception to the otherwise generally applicable aiding and abetting statute for licensed dealers who aid and abet such primary violations.   Accordingly, the Court finds reliance on *Wegg* to be unjustified and determines that a licensed dealer can be punished as a felon for helping to bring about the result proscribed by § 924(a)(1)(A).

### IV.    Offense Elements

Having made this legal determination, the Court finds that there is indeed a factual basis for the pled offense.   In making this factual determination, the Court has considered the parties' stipulation of facts, the presentence investigation report ("PSR"), the supplemental materials submitted by the parties in response to the Court's June 30, 2016 Order requesting such materials, and various materials produced in discovery and provided to the probation officer—including an ATF Report of Investigation ("ROI") of an interview with Betty Tomblin—which the Court will place in the record at sentencing.

"[A] person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission."   *Rosemond*, 134 S. Ct. at 1245 (citations omitted).   The intent requirement is "satisfied when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense."   *Id*. at 1248–49; *see also United States v. Winstead*, 708 F.2d 925, 927 (4th Cir. 1983) (noting that an aider and abettor must "be aware of

20

the [principal's] criminal intent and the unlawful nature of [his] acts"). So long as the accessory takes some act in furtherance of the offense and with the requisite knowledge and intent, "participation in every stage of an illegal venture is not required." *United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1996) (quoting *United States v. Arrington*, 719 F.2d 701, 705 (4th Cir. 1983)). Of course, a fundamental element of aiding and abetting liability is a showing that "all essential elements of the underlying crime were committed by someone." *United States v. Horton*, 847 F.2d 313, 322 (6th Cir. 1988); *see also United States v. Perry*, 643 F.2d 38, 45–46 (2d Cir. 1981); *United States v. Soto*, 539 F.3d 191, 194 (3d Cir. 2008). "The standard test for determining guilt by aiding and abetting is to determine whether a substantive offense was committed by someone, whether there was an act by the defendant which contributed to and furthered the offense, and whether the defendant intended to aid its commission." *United States v. Jones*, 913 F.2d 1552, 1558 (11th Cir. 1990).

The underlying offense, knowingly making a false statement with respect to information required to be kept in the records of a licensed firearms dealer, requires the government to establish the following elements: (1) the dealer was a federally licensed firearms dealer at the time the offense occurred; (2) the principal made a false statement or representation in a record that the licensed firearm dealer was required by federal law to maintain; and (3) the principal made the false statement with knowledge of its falsity. *United States v. Abramski*, 706 F.3d 307, 316–17 (4th Cir. 2013), *aff'd*, 134 S. Ct. 2259 (2014); *accord United States v. Prince*, 647 F.3d 1257, 1266 (10th Cir. 2011); *United States v. Johnson*, 680 F.3d 1140, 1146–47 (9th Cir. 2012).

Here, Defendant has stipulated to the fact that Big Eagle Gun & Pawn III was a federally licensed firearms dealer at the time of the offense and that ATF Form 4473 is a record that a dealer

is required by federal law to keep.   (ECF No. 7, Ex. A at 1); *see also Abramski*, 134 S. Ct. at 2274

(holding that the information that Form 4473 compels a licensed dealer to keep "is information

'required by this chapter,'" and that a false answer on that form "pertains to information a dealer

is statutorily required to maintain").   Moreover, Defendant stipulates to the fact that Betty

Tomblin (identified in the stipulation as "B.T."), the straw transferee who principally violated §

924(a)(1)(A), made a false statement on the Form 4473 and did so with knowledge of that

statement's falsity.   (ECF No. 7, Ex. A at 1 (stating that the defendant aided and abetted Mrs.

Tomblin in "knowingly making a false statement" on the ATF Form 4473).)   Although there are

certain statements in the PSR and Mrs. Tomblin's ROI that call into question whether Mrs.

Tomblin made a knowing false statement on the date specified in the Information, Defendant's

stipulation that the September 1, 2012 transaction was a straw transaction is ultimately supported

by the record.[8]

   Section A on ATF Form 4473 explicitly asks the person filling out the form whether,

among other things, she is the actual transferee or buyer of the firearm listed on the form, and

warns that "[y]ou are not the actual buyer if you are acquiring the firearm(s) on behalf of another

---

[8] In the Information, the offense of conviction is charged as occurring on September 1, 2012.  (ECF No. 1.)  However, Betty Tomblin's statement in the PSR indicates that she only obtained firearms on behalf of Terry Tomblin on one occasion in 2011.  (PSR ¶ 19.)  This representation is based on Mrs. Tomblin's ROI, in which she asserted that she only obtained firearms for her husband once and that "any additional transactions in her name, other than the 2011 transaction must be fraudulent."  (Betty Tomblin ROI at 2.)  Although Terry Tomblin gave a statement supporting his wife's account, (*id.* ¶ 18), the record does not corroborate these statements attempting to minimize Mrs. Tomblin's culpable conduct and the Court takes them with an appropriate grain of salt.   The entirety of the record, as will be discussed, supports the conclusion Mrs. Tomblin knowingly participated in multiple straw transactions and that the Tomblins were not entirely truthful on this point.   *See United States v. Kinney*, 211 F.3d 13, 18 (2d Cir. 2000) (noting that a jury is entitled to disbelieve self-serving testimony denying culpability); *United States v. Cruz-Valdez*, 773 F.2d 1541, 1547 n.6 (11th Cir. 1985) (finding that the "jury was free to believe the inculpatory part of [the defendant's] statement and disbelieve the exculpatory part").   In fact, Mrs. Tomblin's attempt to minimize culpability by denying further involvement is actually suggestive of her knowledge of the illegality of signing her name to the Form 4473 to obtain firearms on her husband's behalf.   *See United States v. McDougald*, 650 F.2d 532, 533 (4th Cir. 1981) (upholding instruction to jury that "an exculpatory statement made by a defendant and found to be untrue could be considered evidence of a defendant's consciousness of guilt").

22

person." (*See, e.g.*, ECF No. 20, Ex. 1.)   On the succeeding page of that form, the transferee is required to certify that all the answers to the Section A questions "are true, correct, and complete," that she has "read and understand[s] the Notices, Instructions, and Definitions on ATF Form 4473," that answering "yes" to the above question regarding the true buyer "if [she] is not the actual buyer is a crime punishable as a felony under Federal law," and that providing any false statement "with respect" to the transaction is also "a crime punishable as a felony under federal law." (*Id.*)   A transferee attests to all of this by signing her name on a line directly below the above-quoted language.

Here, Mrs. Tomblin's signature appears not only on the September 1, 2012 ATF Form that makes up the offense of conviction, (ECF No. 20, Ex. 1), but also on at least nine Form 4473s from 2011 and 2012, (ECF No. 20, Ex. 2).   Each of these signatures are consistent with each other and with a handwriting exemplar that Mrs. Tomblin submitted to ATF agents.   (*See* ECF No. 20, Ex. 3.)   True, she only admitted during her statement to ATF special agents "to knowingly signing a Form 4473 in 2011 to obtain firearms for her husband, Terry Tomblin."   (ECF No. 20 at 5; *see* Betty Tomblin ROI at 1 (recounting Mrs. Tomblin's statement that she only retrieved firearms for her husband once and that the event took place in 2011).)   This account is belied, however, by (1) Defendant's representation, in the join submission filed by his counsel and the government, that he dealt with Mrs. Tomblin on the date specified in the Information, (ECF No. 20 at 2), and (2) a statement from Kimberly Marcum, an employee at Big Eagle, that Mrs. Tomblin "regularly accompanied Terry Tomblin to [Big Eagle] to obtain firearms" on his behalf, (PSR ¶ 23).   The record thus supports the inference that Mrs. Tomblin participated in multiple transactions in which she signed her name to Form 4473 in order to obtain firearms on Terry Tomblin's behalf.

A signature on a document can support an inference of the signor's knowledge of the document's contents.  *See, e.g.*, *United States v. Apazidis*, 784 F. Supp. 2d 159, 165–66 (S.D.N.Y. 2011).  Of course, that inference is subject to rebuttal based on the presentation of evidence that the signor did not in fact know what she was signing.  In this case, however, there is nothing in the record to contradict the inference that Mrs. Tomblin signed Form 4473 with knowledge of its contents, and there is plenty to support the conclusion that her attestation of being the true transferee of Terry Tomblin's firearms was knowingly false.[9]  For one, her signature appears in very close proximity to a warning expressly directed at the consequences of using the form to obtain firearms on behalf of another.  Moreover, Mrs. Tomblin knew that her husband was a convicted felon and knew that he "had to use straw purchasers, including herself, to receive firearms."  (ECF No. 20 at 6; *see* Betty Tomblin ROI at 1–2 (recounting Mrs. Tomblin's statements that she knew her husband had several guns in pawn at the time he was convicted of a felony in federal court, that she retrieved those firearms for him on at least one occasion, and that she was aware of several other individuals who redeemed her husband's pawned firearms on his behalf).)  In fact, by Terry Tomblin's account, Mrs. Tomblin "was uncomfortable with

---

[9] Unfortunately, people sign documents without reading their contents with some regularity.  If there were evidence that this is what occurred here, and Mrs. Tomblin did not know the contents of the forms she was signing, it would be a different matter.  However, neither Mrs. Tomblin nor anyone else has made such an assertion here.  Instead, Mrs. Tomblin tried to convince the ATF that she never signed the forms, presumably including the one from September 1, 2012, at all.  As noted above, the record does not support such claims, and her attempts to minimize culpable behavior serve to demonstrate her knowledge that her conduct was culpable in the first place.

The Court notes that towards the end of this series of transactions, and after the count of conviction occurred, Mrs. Tomblin signed two Form 4473s that contain glaring errors.  The first, dated September 7, 2012, indicated that she was the actual transferee of the firearm, but all of the prohibitions questions were checked "yes," erroneously indicating that she was legally ineligible to possess or acquire firearms for all of the reasons listed on the form.  (*See* ECF No. 20, Ex. 2, Part 3 at 2–4.)  The second form, dated November 1, 2012, has all of the prohibition boxes checked "no," but also truthfully, if erroneously, indicates that Mrs. Tomblin is not the actual transferee of the firearm.  (*See* ECF No. 20, Ex. 2, Part 3 at 8–10.)  Given the numerous previous times that Mrs. Tomblin had either filled out or at least signed the Form 4473, the Court attributes these errant forms to sloppiness or haste rather than ignorance of the form's contents on the part of Mrs. Tomblin.

24

completing the required paperwork and retrieving the firearms." (PSR ¶ 18; *see also* Betty Tomblin ROI at 2 (recounting that Mrs. Tomblin "did not feel right" about the transaction she did admit to participating in).) Nonetheless, the record suggests that she accompanied him to Big Eagle on numerous occasions and signed her name to obtain possession of firearms that she knew were his and that she intended subsequently to transfer to him.

The inferences to draw from these facts are that Mrs. Tomblin was aware of the contents of Form 4473 and that when she signed off on those forms she knew she was falsely claiming to be the true transferee of firearms. Accordingly, the Court finds a basis in fact to conclude that Mrs. Tomblin made a knowing false statement on an ATF Form 4473 on September 1, 2012. *See United States v. Pena*, 541 F. App'x 453, 455 (5th Cir. 2013) (finding a § 924(a)(1)(A) defendant's argument that "there was insufficient evidence that he acted with the requisite intent [to be] contradicted by the explicit instructions, warning, and examples provided on Form 4473, as well as the considerable evidence showing [the defendant] purchased the weapons for [someone else]"); *United States v. Howell*, 37 F.3d 1197, 1203 (7th Cir. 1994) (finding that a reasonable jury could conclude that the defendant "lied by signing her name on the ATF Form as the 'buyer' of" the firearm in question where evidence established that she "was no more than a straw purchaser, 'an eligible purchaser who is acting as an agent, intermediary, or straw purchaser for someone' who is ineligible to purchaser the firearm directly" (quoting *United States v. Ortiz-Loya*, 777 F.2d 973, 979 (5th Cir. 1985))).

Once it is established that the principal committed the underlying offense, Defendant's culpability naturally follows. According to Kimberly Marcum, it was Defendant's routine practice to instruct prohibited persons to use straw purchasers to fill out the forms necessary to

allow them to obtain otherwise unavailable firearms.   (PSR ¶ 21.)       In this case, he knew that

Terry Tomblin was a convicted felon, legally prohibited from possessing a firearm, and yet devised

a plan to allow Mr. Tomblin to retrieve the firearms he had in pawn through the falsification of

Form 4473s and the use of straw transferees.   (*See id.* ¶¶ 17–18.)   In particular, Defendant

suggested on at least one occasion that Mr. Tomblin use his wife as a straw transferee, (*id.* ¶ 18),

and dealt with Mrs. Tomblin on multiple occasions, signing his name to several forms on which

her signature appears.   (*See* ECF No. 20, Ex. 2.)

As noted above, however, a defendant must "be aware of the [principal's] criminal intent

and unlawful nature of [his] acts" in order to be liable as an aider and abettor.   *Winstead*, 708 F.2d

at 927.   The primary difficulty with this case lies in demonstrating that Defendant was adequately

aware of the criminal nature of Betty Tomblin's actions, and specifically whether he knew that her

signatures on the Form 4473 were made with knowledge of falsity.   This double-layered inquiry

into intent places the Court in the somewhat uncomfortable position of having to infer what

Defendant inferred about the knowledge and intent of Betty Tomblin.   Ultimately, however, there

is sufficient evidence in the record to allow the Court to draw the necessary inferences.

"With respect to aiding and abetting, '[i]nferences from established facts are accepted

methods of proof when no direct evidence is available so long as there exists a logical and

convincing connection between the facts established and the conclusion inferred.'"   *United States

v. Soto*, 539 F.3d 191, 194 (3d Cir. 2008) (alteration in original) (quoting *United States v.

Cartwright*, 359 F.3d 281, 287 (3d Cir. 2004)).   Here, there is a logical connection between the

facts demonstrating Defendant's extensive contact with both Terry and Betty Tomblin, and the

nature of their general scheme to allow Mr. Tomblin to retrieve firearms, and the inference of

26

Defendant's awareness that all three individuals were in on the straw purchasing scheme together and that Mrs. Tomblin knew that she was making false statements on the Form 4473. *See id*. at 195 (upholding conviction based on circumstantial evidence that defendant was a true firearms transferee who used a straw to obtain firearms and rejecting argument that "the government must offer proof that the defendant expressly knew that the 'straw purchaser' was falsely certifying to a specific question in the 4473 form"); *United States v. Shorty*, 741 F.3d 961, 970 (9th Cir. 2013) (upholding conviction of a true transferee for aiding and abetting the § 924(a)(1)(A) offense of his straw purchaser where the evidence demonstrated that the defendant "encouraged [the straw purchaser] to represent herself as the 'actual buyer' and that, in order to do so, she was required to lie on the [Form 4473]," notwithstanding the fact that the defendant did not know the straw purchaser would have to make such false statement in order to effectuate the straw purchase).

On the date of the offense, Defendant stipulates that he encouraged Mrs. Tomblin to sign the required form with knowledge that the true transferee would not pass a background check, and signed and submitted the form despite knowing that it falsely identified the true transferee of the firearm in question.   In short, Defendant encouraged, if not instigated, this straw transaction, likely knew quite well the contents of the Form 4473, and further clearly knew that he and the Tomblins were all "in on it."   Given the circumstances of this case and the course of dealing of these parties, the Court finds a factual basis to conclude that Defendant sought by these actions "to make [the underlying criminal offense] succeed," *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938), and accordingly that a factual basis exists for Defendant's plea to the aiding and abetting offense.

### V.      Conclusion

For the foregoing reasons, the Court **FINDS** that there is a factual basis for Defendant's

plea.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel,

the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:      July 26, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

28